**Joan J. WEBER, Appellee,**

v.

**SAINT LOUIS UNIVERSITY, Appellant.**

No. 92–3903.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1993.

Decided Oct. 6, 1993.

F. Douglas O'Leary, St. Louis, MO, argued (Robyn Greifzu Fox appeared on brief), for appellant.

Brian A. Spector, St. Louis, MO, argued (Clyde E. Craig, on brief), for appellee.

Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Saint Louis University appeals the trial court's grant of summary judgment to Joan Weber on a claim for benefits under her group disability insurance. Central to that appeal is the university's challenge to the trial court's refusal to allow discovery on, to hear evidence regarding, or to consider in any way the issue of when Ms. Weber became disabled. We reverse the grant of summary judgment and remand this case to the trial court for further proceedings.

---

## I.

Between 1981 and 1984, Ms. Weber was studying for her master's degree in business administration at Saint Louis University. In mid–1983, she was hired as an assistant with the university's Small Business Development Center. She worked there part-time until she received her degree in mid–1984; she then became a full-time employee until the elimination of her position and the consequent termination of her employment in September, 1986.

As an employee, Ms. Weber was eligible to participate in the retirement plan in effect at Saint Louis University. She applied to do so in early 1986 and was accepted for participation as of April, 1986. The retirement plan used the contributions of participants to buy annuity contracts from TIAA/CREF (essentially a large insurance company primarily serving university and college employees). After an employee completed three years of continuous employment, the university would match any contributions made by the employee.

As a university employee, Ms. Weber was also covered under group disability insurance obtained through TIAA. That plan provided two different types of benefits in the event an employee became disabled—monthly income payments based on a percentage of the employee's regular salary, and monthly premium payments toward any annuities already purchased under the retirement plan by the university's matching contributions. The only condition on the income payments was that the employee's period of disability have begun while the employee was insured (in other words, while the employee was working for the university, since coverage under the group disability insurance ended when an employee's university employment ended). To be eligible for the annuity premium payments, however, an employee's period of disability had to have begun at a time when the university was making matching contributions toward the employee's retirement plan.

In mid–1988, Ms. Weber applied for disability benefits under the group disability insurance in effect at the time of her employment with the university. TIAA preliminarily approved Ms. Weber's application for income payments and annuity premium payments, but the university challenged that approval with respect to the annuity premium payments. (Under the terms of the group disability insurance contract, the university had the right to overrule a preliminary determination by TIAA of coverage for an employee.) The university contended at that time that because of her part-time employment, Ms. Weber had never completed enough years of service to have become eligible for matching retirement contributions from the university and, accordingly, for the annuity premium payments. Consequently, TIAA made only the income payments to Ms. Weber.

In late 1989, Ms. Weber sued the university in federal court. Her complaint alleged that she had completed enough years of service to have become eligible for matching retirement contributions from the university as of June 1, 1986, and was therefore entitled to those contributions under the retirement plan. (Interestingly, the complaint does not mention that eligibility for matching retirement contributions would also allow the annuity premium payments under the group disability insurance.) The university counterclaimed for a declaratory judgment with respect to when Ms. Weber became disabled and, therefore, with respect to the university's obligations under the retirement plan and the group disability insurance plan. After several discovery skirmishes, the trial court ruled that because the university had never challenged the fact of Ms. Weber's disability at the relevant times, and therefore the threshold premise of her right to any benefits at all under the group disability insurance, the trial court would not allow discovery on the issue of when Ms. Weber became disabled.

The parties made cross-motions for summary judgment. In its briefs, the university conceded that Ms. Weber actually had completed enough years of service as of June 1, 1986, to become eligible for matching retirement contributions from the university. The university argued, however, that its obligations under the retirement plan (including potential liability for annuity premium payments under the group disability insurance

plan) ended on September 30, 1986, when Ms. Weber's university employment ended. The university further argued that Ms. Weber's period of disability had begun either before June 1, 1986, or after September 30, 1986, but, in any event, not while the university was making matching contributions toward Ms. Weber's retirement plan. Consequently, the university argued, it was not liable for any annuity premium payments under the group disability insurance plan.

The trial court denied summary judgment to the university and granted it to Ms. Weber on both her claim and the university's counterclaim. *See Weber v. St. Louis University,* 804 F.Supp. 1141 (E.D.Mo.1992). In its opinion, the trial court stated that it was reviewing *de novo* the university's denial of benefits (the annuity premium payments) to Ms. Weber. *Id.* at 1145. Even under such a review, however, the trial court held that "it would be unfair to permit [the university] to expand the scope of review beyond the facts available to [it] at the time the decision to deny benefits was made." *Id.* at 1146. The trial court declared, therefore, that it would "limit the review to the facts that [the university] considered at the time the decision to deny benefits was made." *Id.*

Noting the university's assertion that "only TIAA has the medical information supporting [Ms. Weber's] claim of disability," the trial court concluded that no definitive information with respect to the date of onset of Ms. Weber's disability "was ... before [the university] when the decision to deny benefits was made." *Id.* The trial court stated, therefore, that since the university "relied on TIAA's determination of the fact of disability and did not make an independent review of that conclusion," "it would be unfair to permit [the university] ... to question TIAA's determination of disability," which occurred only when the university learned that "its [original, different] basis for denial was unfounded." *Id.* On appeal, the university argues that the trial court erred in refusing to allow discovery on, to hear evidence regarding, or to consider in any way the issue of when Ms. Weber became disabled and, therefore, whether she was ·covered under the university's group disability insurance at that time.

## II.

Both the retirement plan and the group disability insurance plan are employee welfare benefit plans subject to the Employee Retirement Income Security Act (ERISA), *see* 29 U.S.C. §§ 1001–1461. *See* 29 U.S.C. § 1002(1)(A), § 1002(2)(A), § 1003(a)(1). No one disputes that the appropriate scope of review in this particular case is *de novo. See, e.g., Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The question before us is whether a trial court conducting a *de novo* review of a denial of benefits under an employee welfare benefit plan subject to ERISA must or may consider grounds or evidence not relied upon by the plan administrator at the time the denial was made. Two recent cases are dispositive. (We note that the trial court did not have the benefit of these cases, since both were decided after the trial court order on appeal here.)

In *Farley v. Benefit Trust Life Insurance Co.,* 979 F.2d 653, 660 (8th Cir.1992), the court held that in a *de novo* review of a denial of benefits under an employee welfare benefit plan governed by ERISA, it is entirely proper for a trial court to consider "policy provisions [that] clearly may ... be a basis for such a denial" even if those provisions were not "specified ... as the basis of denial of coverage." We hold today that, in fact, a trial court must consider all of the provisions of the policy in question if those provisions are proffered to the trial court as a reason for denial of coverage, since to do otherwise would "permit the oral modification of employee welfare plans governed by ERISA, a result manifestly in conflict with the intent of the statute and with the case law governing it." *Id.* ·

In the circumstances of the case before us, then, we hold that the trial court should have considered the provisions of the group disability insurance contract with respect to when coverage was effective, and therefore whether Ms. Weber was covered at the times relevant for determining eligibility for either monthly income payments or monthly annuity premium payments. Accordingly, we remand the case so that the trial court may do so.

 

In *Donatelli v. Home Insurance Co.*, 992 F.2d 763, 765 (8th Cir.1993), the court held that in a *de novo* review of a denial of benefits under an employee welfare benefit plan governed by ERISA, the trial court has the discretion to decide whether to receive "evidence in addition to that presented" to the plan administrator and therefore to consider the case upon a "somewhat expanded" factual basis. We review a trial court's decision on that question for abuse of discretion. *Id.*

In the circumstances of the case before us, we hold that it was an abuse of discretion for the trial court both to refuse to allow discovery, and to refuse to receive additional evidence, on the question of the date of onset of Ms. Weber's disability. This is because the only materials currently in evidence as to the date of onset of Ms. Weber's disability are insufficient to sustain a verdict for either Ms. Weber or the university on the basis of anything except speculation. (We do not address the issue of who has the burden of proof on date of disability.)

We comment in this regard that, at least with respect to *de novo* review, we do not consider a plan administrator to be analogous to a governmental administrative agency whose decisions are subject to limited judicial scrutiny. Nor, in our view, are the materials considered by a plan administrator strictly analogous to a "record," in the sense that the courts use that term to describe the basis for a prior adjudication by a governmental administrative agency. But for its statutory basis in ERISA, Ms. Weber's lawsuit would be considered a common-law contract case about a disability insurance policy. It is wholly proper, and indeed necessary, for the parties in such a case to be permitted to introduce evidence relevant to when the insured became disabled, and therefore whether the policy was in effect at that time.

### III.

For the reasons stated, we reverse the judgment of the trial court and remand the case for further proceedings.