In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2616

PAUL M. KROLNIK,

*Plaintiff-Appellant*,

*v.*

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07-C-64—**Rudolph T. Randa**, *Chief Judge*.

ARGUED APRIL 8, 2009—DECIDED JUNE 29, 2009

Before EASTERBROOK, *Chief Judge*, and KANNE and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Paul Krolnik enjoys disability
insurance as a fringe benefit of his job. He stopped
working in June 2002 because of a hernia and back pain.
The hernia was repaired surgically, but Krolnik did not
return to work. After a psychiatrist diagnosed Krolnik
with dysthymia and major depression, Prudential started
sending him long-term disability payments. But "long-

term" means two years, the Plan's limit when inability to work is caused even in part by a mental illness (which the policy defines to include depression). At the end of January 2005 Prudential ended the disability benefits, citing the two-year cap. After exhausting his administrative remedies, Krolnik filed this suit under the Employee Retirement Income Security Act (ERISA).

Unless a welfare-benefit plan confers interpretive or operational discretion on its administrator or insurer, the judiciary makes an independent decision about benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); see also *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008). The parties agree that this employer's Plan is subject to that standard, and we will not look behind that agreement. (No matter what the Plan's language may be, people are free to accept the *Firestone* standard, which is ERISA's norm.) So the district judge had to make an independent decision—and appellate review of any finding of fact is for clear error. Fed. R. Civ. P. 52(a). But the district court did not hold a trial or make any findings, and therein lies a problem.

Krolnik proposed to take discovery in order to generate evidence about his medical and mental conditions, and the extent (if any) to which his mental condition affects his ability to work. Prudential opposed all discovery, contending that the suit should be resolved on the administrative record. Citing a decision that discovery may be limited to what is necessary for an informed judicial decision, see *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478, 490 (7th Cir. 2007), the district court

concluded that no discovery at all is appropriate, because the costs of conducting depositions of multiple physicians exceed the benefits. The judge therefore barred all discovery on medical questions. 2007 U.S. Dist. LEXIS 96847 (E.D. Wis. Nov. 15, 2007). Krolnik then asked some physicians to provide affidavits describing his condition and prognosis, and he tendered these to the judge—who struck them from the record, writing:

> The submission of materials outside of the administrative record contradicts the scope and intent of the Court's protective order. While that order was directed towards future discovery, Krolnik cannot circumvent the force of the protective order by surreptitiously filing information outside of the administrative record in support of his motion papers.

2008 U.S. Dist. LEXIS 43024 at *9 (May 30, 2008). Having barred Krolnik from offering any evidence, the judge then granted summary judgment to Prudential, relying on the two-year cap and the fact that the administrative record contains two medical evaluations implying that Krolnik is able to work. The judge did not mention the contrary evidence in the administrative record.

*Firestone* holds that "*de novo* review" is the norm in litigation under ERISA. Cases such as this show that "*de novo* review" is a misleading phrase. The law Latin could be replaced by an English word, such as "independent." And the word "review" simply has to go. For what *Firestone* requires is not "review" of any kind; it is an independent *decision* rather than "review" that *Firestone*

contemplates. The Court repeatedly wrote that litigation under ERISA by plan participants seeking benefits should be conducted just like contract litigation, for the plan and any insurance policy are contracts. 489 U.S. at 112–13. In a contract suit the judge does not "review" either party's decision. Instead the court takes evidence (if there is a dispute about a material fact) and makes an independent decision about how the language of the contract applies to those facts.

That's well understood in insurance litigation under the diversity jurisdiction. If the plaintiff says that a fire at his home destroyed a valuable painting, and the insurer declines indemnity after finding that (a) there was no such painting, and (b) the fire was caused by arson, the federal judge won't ask what evidence the insurer considered. The court will decide for itself where the truth lies. A judge would not dream of forbidding the parties to take discovery, let alone of rejecting affidavits that did not depend on discovery. Evidence is essential if the court is to fulfill its fact-finding function. Just so in ERISA litigation. When review is deferential—when the plan's decision must be sustained unless arbitrary and capricious—*then* review is limited to the administrative record. See *Perlman v. Swiss Bank Corp.*, 195 F.3d 975 (7th Cir. 1999). Otherwise, however, the court decides on the record made in the litigation. And, if material evidence conflicts, then there must be a trial.

Medical evidence presented to the plan or its insurer may be placed in the judicial record, and when this evidence is ample it may in principle constitute the whole

record. See *Patton* and *Casey v. Uddeholm Corp.*, 32 F.3d 1094 (7th Cir. 1994). Discovery may be curtailed to the extent that the Rules of Civil Procedure allow. "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". Fed. R. Civ. P. 26(c)(1). If the administrative record contains comprehensive medical evidence, then duplicative discovery may be limited to avoid "undue burden or expense". But we cannot imagine any justification for refusing to admit evidence that one party has procured at its own expense, such as the medical affidavits that Krolnik tendered. Tellingly, the district judge did not cite authority for throwing out the affidavits, and Prudential's brief does not supply any.

Nor did the judge explain why summary judgment is apt. The court needs to know whether depression ever disabled Krolnik. If the answer is no—either because his mental condition never was disabling, or because his physical impairments disabled him independent of his mental state—then the Plan's two-year bar does not apply. If the answer is yes, and Krolnik's mental condition played a causal role in his past inability to work, it remains essential to know whether it remains important.

A reasonable trier of fact might conclude that, even if depression was a contributing cause of Krolnik's *past* inability to work, any *current* inability to work has a physical rather than a mental cause. The policy does not say that, if two years of benefits have been provided on account of a mental condition, then no future benefits may be paid for a physical impairment: it says only that

two years is the maximum period of benefits that may be justified, in whole or in part, by a mental condition. If Krolnik's limitations today are entirely physical (or if physical problems disable him no matter what his mental state), then benefits are available under this policy.

Then there is a dispute about whether Krolnik can work even with all of his physical and mental problems. Some physicians say yes, others no. If judicial review were deferential, then Prudential's decision would be sustained easily. But the court must make an independent decision. To do this, the finder of fact must weigh *all* of the medical evidence. Yet the district judge did not mention any of the evidence favoring Krolnik (including the affidavits that should have been accepted). If a paper record contains a material dispute, a trial is essential. And at trial Krolnik would be free to offer medical evidence of his own and cross-examine the physicians who produced the reports that underlie Prudential's decision. See *Richardson v. Perales*, 402 U.S. 389 (1971) (even when written medical reports are used as the principal evidence in a disability-benefits proceeding, the adverse party is entitled to cross-examine the physicians who prepared the reports).

All in all, it would be best for judges and lawyers to stop thinking about "*de novo* review"—with the implication that the judge is "reviewing" someone else's action—and start thinking about independent decision, which is what *Firestone* requires.

Krolnik argues that he is entitled to prevail without a remand because Prudential helped him apply for

disability benefits under the Social Security program. (The SSA granted his application.) Prudential therefore is estopped to deny that he is disabled, Krolnik maintains. That argument ignores *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), which holds that a finding of disability under the Social Security program need not imply disability for any other purpose. The Social Security Administration uses shortcuts, such as listed impairments and an age/education grid, designed to manage a high-volume program. Major depression is a listed impairment under the Social Security program, which does not impose any time limit on benefits when the disability is caused by a mental illness. The ERISA Plan that covers Krolnik has its own terms, and Prudential did not surrender the ability to enforce them by helping Krolnik obtain all benefits available from the federal government. The district judge should compare the Social Security rules with the Plan's terms, to ascertain whether the award of Social Security benefits is informative, see *Diaz v. Prudential Insurance Co.*, 499 F.3d 640, 644–45 (7th Cir. 2007), but this differs from estoppel.

The judgment of the district court is affirmed to the extent it holds that Prudential is subrogated to $35,850 of the Social Security benefits, which Krolnik must pay over to Prudential. The judgment otherwise is vacated, and the case is remanded for proceedings consistent with this opinion.