754 F.Supp.2d 1047 (2010)
Eric S. RINGWALD, Plaintiff,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.
No. 4:08CV801-DJS.
United States District Court, E.D. Missouri, Eastern Division.
December 14, 2010.
*1049 Deborah A. Arbogast, Attorney at Law, Clayton, MO, Gregory A. Oliphant, Law Office of Gregory A. Oliphant, St. Louis, MO, Sophie Woodworth, Holman Schiavone, LLC, Kansas City, MO, for Plaintiff.
Richard J. Pautler, Thompson Coburn, LLP, St. Louis, MO, for Defendant.

ORDER
DONALD J. STOHR, District Judge.
Plaintiff Eric S. Ringwald challenges the discontinuation of his long-term disability benefits under a group insurance plan ("the Plan") in which he participated through his employer, Harrah's Casino. The Plan, identified as "Harrah's Operating Company, Inc. Short Term Disability-Grade 17 and below/Long Term Disability-Grade 22 and below," is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. Now before the Court is defendant The Prudential Insurance Company of America's motion for summary judgment [Doc. # 41]. The motion has been fully briefed by the parties and is now ripe for disposition.

Summary Judgment Standard
In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the movant to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" if it is a legal element of a claim under applicable law that might affect the outcome of the case. Anderson, 477 U.S. at 248, 106 S.Ct. 2505. An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find for the non-moving party. Id. Once the movant has met its burden, the non-moving party may not rest on the allegations in its pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e).

Facts
The following facts are undisputed for purposes of the instant motion. In April 2004, plaintiff was a Table Game Dealer at Harrah's. At that time, plaintiff was a participant in the Plan within the meaning of ERISA § 3(7). The Plan, which was issued to Harrah's by defendant, is an employee welfare benefit plan within the meaning of ERISA § 3(1). In relevant part, the long-term disability coverage provides as follows:
BENEFIT INFORMATION
How Does Prudential Define Disability?
You are disabled when Prudential determines that:
 you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
 you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

*1050 After 24 months of payments you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.
* * *
What Disabilities Have a Limited Pay Period Under Your Plan?
Disabilities, which, as determined by Prudential, are due in whole or part to mental illness have a limited pay period during your lifetime.
The limited pay period for mental illness is 24 months during your lifetime.
* * *

Mental illness means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.
Doc. # 9-1, p. 24, 32-33.
In October 2005, plaintiff submitted a claim to defendant for long-term disability benefits, claiming he had been disabled since April 16, 2004. He claimed to be unable to work because of depression and HIV. Defendant initially denied the claim, but after reconsidering it through the established appeals process, concluded that plaintiff was disabled by his mental illness. Defendant then paid plaintiff long-term disability benefits for 24 months from July 17, 2004 through July 16, 2006. Defendant denied long-term benefits beyond 24 months, citing the limitation on benefits for disabilities caused in whole or part by mental illness. Plaintiff was regularly treated by a psychiatrist, Dr. Kevin Miller, and a psychologist, Dr. Alice Vliestra,[1] and since 2004, plaintiff has been diagnosed by numerous doctors with depression and bipolar disorder, and prescribed Lamictal, Zoloft, and Lexapro for these illnesses.

Administrative Record
The administrative record in this case consists of nearly 500 pages of medical reports, medical records, and correspondence. The Court chronologically summarizes the relevant portions of the record below.
In 2005, plaintiff was examined by Dr. Kenneth Bohm, a clinical psychologist, as part of a custody proceeding in state court to determine whether plaintiff was fit to serve as a parent to his child. Dr. Bohm noted that plaintiff was prescribed Zoloft as an antidepressant. He suggested that plaintiff be prescribed mood stabilizing or antipsychotic medication. Dr. Bohm's diagnosis of plaintiff included schizoaffective disorder and personality disorder.
On May 5, 2006, Dr. Morton Singer, one of plaintiffs treating physicians, wrote to defendant's claim representative "to appeal the denial of Mr. Ringwald's disability claim." Doc. # 10, p. 230. He stated that:
This patient was experiencing progressively symptomatic HIV disease from *1051 December 2003 through July 2004 when he resumed antiretroviral therapy. He was not receiving medication for his HIV infection due to adverse effects he had experienced in the past.
In addition to the HIV related thrombocytopenia which developed in 2002 and persisted until resuming treatment in July 2004, he was also experiencing HIV related wasting syndrome. He sustained a 20 pound weight loss or greater than 10% loss body weight in the preceding 12 months. His weight declined from 171 pounds to 151 pounds in March 2004 which is documented in his medical records. This meets criteria for CDC defined HIV Wasting Syndrome.
During this same time period off of antiretroviral therapy, his CD4 lymphocyte count declined from 520 to 280 and his HIV viral load increased from 22000 to 60000. The HIV infection had become more active with increased viral burden, immunodeficiency, wasting and weight loss as well as progressive fatigue. This was responsible for Mr. Ringwald's disability.
He may also have a sleep disorder for which he was taking Valium at that time, but I do not believe his use of Valium at bedtime was causing his fatigue, weight loss, wasting, and progressive immunodeficiency. In fact, when Mr. Ringwald restarted antiretroviral therapy in July 2004, his CD4 lymphocyte count increased to 490 and HIV viral load declined to undetectable levels. His weight increased to 172 pounds within six months and his fatigue improved. His disability in March 2004 was due to his HIV disease and improved with treatment starting in July 2004. Please reconsider your denial of his claim.
Id. at 230-31.
On May 23, 2006, Dr. Vliestra wrote a letter on plaintiff's behalf concerning his treatment. The letter was addressed "To Whom It May Concern" and appears to be written in regards to plaintiff's parenting abilities. Dr. Vliestra noted that their "counseling sessions focused on assessing his depression, parenting capacities, and family support, and then focused on a treatment plan for establishing healthier relationships." Id. at 157. Her letter concluded:
He currently is on medication which has improved his ability to focus and concentrate. His original depression has improved significantly. He informs me that he is fully cooperating and complying with all court requests in order to be a parent for [his minor child]. I believe he is capable of parenting a child.
Id.
On May 30, 2006, defendant's claims representative responded to Dr. Singer regarding his May 5, 2006, assessment of plaintiff's condition. Defendant's representative noted that Dr. Singer's assessment indicated that "with treatment, Mr. Ringwald's CD4 count increased, his viral load decreased, his weight increased to 172 within 6 months, and his fatigue improved." Id. at 468. Defendant's representative asked Dr. Singer to "[p]lease advise our office if, given these improvements, you believe that Mr. Ringwald remained unable to work after July, 2004. If so, please advise for what period(s) he remained disabled and how he was impaired." Id.
In June 2006, Dr. Singer responded to defendant's representative's request for additional information concerning plaintiff's disability claim. He stated that plaintiff:
has remained disabled since 2004 despite improvement in his immune function. He has had persistent depression since 2004 causing impairment in his cognitive function and his ability to work. His *1052 ability to concentrate has been severely compromised as well as his ability to function socially. He has been seen by several psychiatrists and neurologist [sic] in the past two years and most recently has been started on Lexapro and Risperdal. His disability remains ongoing.
Id. at 225.
At the end of July, 2006, Dr. Vliestra wrote a letter to plaintiff responding to his request for a statement concerning their counseling. Dr. Vliestra stated that plaintiff "has been in counseling with me since May 2005 to the present. He has suffered from depression and anxiety as a result of his medication for HIV as well as the stress in his life." Id. at 222.
In a report dated December 1, 2006, Dr. Stephen Gerson offered an evaluation of plaintiff's disability claim with respect to his mental illness. Having only reviewed his medical records, Dr. Gerson opined that the records did not support a disability based on mental illness. Id. at 30. In a second report dated December 12, 2006, Dr. Gerson changed his opinion. After issuing his first report, Dr. Gerson received a telephone call from Dr. Miller, plaintiff's treating psychiatrist, and they discussed Dr. Miller's treatment of plaintiff. Dr. Gerson's second report states that "the information from Dr. Miller, who was a reliable informant, radically changed my opinion from the file review of 12/1/06." Id. at 32. Having spoken with Dr. Miller, Dr. Gerson believed that plaintiff was indeed disabled by bipolar psychosis through July 2006. Based on this new report, defendant paid plaintiff long-term disability benefits through July 2006.
On January 18, 2007, Dr. Singer wrote to defendant's claim representative. He stated that, "Eric Ringwald has been disabled due to his HIV disease since April 2004. He remains totally disabled at this present time." Id. at 129.
On June 14, 2007, plaintiff's attorney wrote defendant regarding plaintiffs appeal of defendant's decision to discontinue his benefits after July 2006. Plaintiff's attorney acknowledged that plaintiff was receiving long-term disability benefits due to bipolar disorder and wrote that "[w]hile we maintain that Bi Polar Disorder is a physical disorder and not mental, we also contend that Mr. Ringwald has several physical disabilities which prevent him from performing any gainful occupation." Id. at 89. The letter continued: "The new medical documentation will show that Mr. Ringwald is unable to work due to HIV. While his condition is controlled, the side effects of the many medications prevents him from performing any work. We ask that you give controlling weight to the opinions of Mr. Ringwald's treating physician, Dr. Morton Singer." Id.
On June 27, 2007, in response to defendant's request, Dr. Michael Silverman submitted his "independent peer review" of the medical evidence. Dr. Silverman concluded that plaintiff was not functionally impaired as of July 2006. He summarized his conclusion as follows:
Upon review of the medical records, the claimant has a diagnosis of HIV, which is managed by [an] excellent regimen of therapy. There is no evidence that the claimant is functionally impaired due to this condition specifically as of 7/16/06, forward. The claimant also has a prolonged history of psychiatric condition of which clearly can have a role into medical condition with respect to his physical condition, although there is no evidence that this is affecting his physical condition, specifically a diagnosis of HIV. The diagnosis of fatigue is reportedly improved according to psychiatry and neurology notes with respect to adjustment of psychiatric medications. Specifically in relation to his infectious disease diagnosis of HIV, as of the time period *1053 in question, there is no evidence of impairment. This is well controlled with the current treatment regimen. His status with excellent CD4 count and viral load are maintained with Mr. Ringwald's continuing treatment regimen. Although Mr. Ringwald had musculoskeletal complaints, which are being followed by chiropractic services, this falls outside the scope of this review. Solely in relation to his infectious disease diagnosis of HIV, as described above ... Mr. Ringwald has no evidence of impairment as of the time period in question that would limit or restrict his ability to function.
Id. at 52.
In September 2007, Dr. Singer, wrote a letter for plaintiff describing plaintiff's inability to work. He stated that plaintiff:
remains unable to work due to a variety of disabling symptoms that have persisted since 2005. These symptoms include, fatigue, anxiety, poor concentration and attention, disorganized thoughts, dyspepsia, gastroesophageal reflux, intermittent diarrhea, chronic rhinitis, headaches, dermatitis, chest pain, and sleep disturbance.
His symptoms do not fit into a single clinical syndrome but are likely related to a variety of conditions including his HIV disease, Bipolar disease, allergic rhinitis, gastroesophageal reflux disease, allergic rhinitis [sic], atopic dermatitis, Helicobacter gastritis, chronic insomnia, as well as adverse effects from his antiretrovirals.
Having observed this patient since his diagnosis with HIV disease, his ability to function in a work situation, his ability to focus mentally, perform high level cognitive functions, and even live independently have progressively deteriorated. This loss of function has occurred despite adequately suppressing his HIV infection, treating his bipolar disease, and attempting to manage his other complex of symptoms.
The cause of his disability remains unclear but I have no uncertainty that Mr. Ringwald is incapable of employment at this time. His level of functioning has not improved despite aggressive treatment of his medical conditions. I disagree with Dr. Silverman's conclusions that Mr. Ringwald's functional impairment is unrelated to his HIV disease. He was fully functional, living independently, working 2 jobs prior to his diagnosis of HIV. Clearly other factors have contributed to his impairment but Dr. Clifford did not rule out HIV as a possible factor.
Id. at 15.
On January 11, 2008, plaintiffs attorney wrote to defendant regarding plaintiffs appeal. He asked "that [defendant] take into account the co-morbidity of Mr. Ringwald's symptoms." Id. at 9. He further stated that "[a]s Dr. Singer points out, Mr. Ringwald's symptoms do not fit into one clinical syndrome." Id.
In a letter dated January 25, 2008, Dr. Silverman reevaluated plaintiffs claim, at defendant's request, taking into account plaintiffs new supporting information, namely the September 2007 letter from Dr. Singer and the July 2007 letter from plaintiffs attorney. Dr. Silverman concluded that these documents did not change his opinion that plaintiff was not disabled by his physical ailments. With respect to the mental illnesses, Dr. Silverman did not express an opinion and deferred to a specialist in that field.

ERISA Standards
Under ERISA, plan beneficiaries are entitled to judicial review of benefits determinations. See Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir.1998). The Court reviews defendant's decision to discontinue plaintiffs long-term disability *1054 benefits after 24 months under a de novo standard of review. See Ringwald v. Prudential Ins. Co. of Am., 609 F.3d 946, 949 (8th Cir.2010) (requiring de novo review of defendant's denial of benefits). Under the de novo standard, the Court makes an independent decision about benefits, without giving any deference to the internal plan administrator's decision. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); see also Met. Life Ins. Co. v. Glenn, 554 U.S. 105, 111, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).
To the extent the Court's review requires it to interpret the language of the ERISA plan, the Supreme Court refers the Court to the law of trusts, in which the terms of written trusts are "determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible." Bruch, 489 U.S. at 112, 109 S.Ct. 948 (quoting Restatement (Second) of Trusts § 4, Comment d (1959)). The intent of the settlor is first determined by careful examination of the provision in question, giving plainly stated terms their ordinary meanings. Wilson v. Prudential Ins. Co. of Am., 97 F.3d 1010, 1013 (8th Cir.1996); Jensen v. SIPCO, Inc., 38 F.3d 945, 950 (8th Cir.1994); see also Bond v. Cerner Corp., 309 F.3d 1064, 1067 (8th Cir.2002). If a provision is unambiguous, the Court need not refer to other plan provisions or extrinsic evidence to determine the settlor's intent. Jensen, 38 F.3d at 950.
With regard to ambiguous provisions, a contract is ambiguous when it is reasonably susceptible to more than one interpretation. Wilson, 97 F.3d at 1013 (citing Ehrhardt v. Penn Mut. Life Ins. Co., 902 F.2d 664, 667 (8th Cir.1990)). The Eighth Circuit Court of Appeals has held that "the common rule of construction that ambiguous language in an insurance policy is construed against the insurer has no place in the construction of an ERISA plan." Bernards v. United of Omaha Life Ins. Co., 987 F.2d 486, 488 n. 1 (8th Cir. 1993) (citing Finley v. Special Agents Mut. Ben. Ass'n, 957 F.2d 617, 619 (8th Cir. 1992)). The Eighth Circuit has "interpreted Bruch to mean that `unless the plan language specifies otherwise, courts should construe any disputed language without deferring to either party's interpretation,'" Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150, 153-54 (8th Cir.1990) (quoting Wallace v. Firestone Tire & Rubber Co., 882 F.2d 1327, 1329 (8th Cir.1989)), and instead, the Court should look to the other plan provisions or extrinsic evidence to resolve the ambiguity as to the settlor's intent, Jensen, 38 F.3d at 950; see Barker v. Ceridian Corp., 193 F.3d 976, 979-81 (8th Cir.1999). Only if an ambiguity remains after giving the language its ordinary meaning, considering the context of the ambiguous provision within the plan as a whole, and admitting extrinsic evidence, will a court construe an ambiguity against the drafter under federal common law concerning construction of ERISA plans. Delk v. Durham Life Ins. Co., 959 F.2d 104, 106 (8th Cir.1992).
Plaintiff cites Krolnik v. Prudential Insurance Co. of America, 570 F.3d 841 (7th Cir.2009), and Weber v. Saint Louis University, 6 F.3d 558 (8th Cir.1993) as they relate to the consideration of evidence under de novo review. Krolnik and Weber confirm the Court's understanding of its role in this case: to make an independent determination of plaintiffs entitlement to benefits. The cases also indicate that the Court may consider evidence that was not considered by defendant when it made its decision to deny benefits. See Krolnik, 570 F.3d at 843; Weber, 6 F.3d at 560-61. Plaintiff did not submit any evidence in response to defendant's motion for summary *1055 judgment and instead argues his case based on the administrative record. Because no additional evidence was submitted, the Court need not decide whether any evidence should be excluded from consideration. To the extent plaintiff continues to seek the ability to conduct further discovery, the Court stands on its prior order addressing this issue. See Doc. # 40.

Discussion
Suit under ERISA is authorized by 29 U.S.C. § 1132(a)(1)(B), which allows a plan participant "to recover benefits due to him under the terms of his plan." The ERISA plan in this case is disability insurance, in which defendant agrees to pay a Plan participant if he becomes unable to work due to a disability. At first, defendant will pay the participant if he is unable to perform his regular occupation. After 24 months, the Plan requires the participant to obtain other gainful employment for which he is reasonably suited given his background. Only if the participant is unable to perform the duties of any gainful employment will defendant continue to pay benefits after 24 months.
At the 24-month mark, the Plan also distinguishes between physical and mental illnesses. If a physical illness prevents a participant from performing any gainful employment, then he can receive benefits until he reaches retirement age. If a mental illness, in whole or part, causes a participant to be unable to perform any gainful employment, then he will not receive any further benefits beyond the 24 months of benefits he has already received. Thus, if a mental illness, in combination with a physical illness, causes a participant to be unable to perform any gainful employment, then benefits are limited to 24 months.

Issue in Dispute
As an initial matter, the Court notes that plaintiff argues that defendant "failed to consider an abundance of doctor's reports that provide objective evidence of the basis of Ringwald's impairment." Doc. # 43, p. 11. Plaintiff argues that defendant "cherry-picked" from the medical evidence, discounting the reports of Dr. Singer and relying on the reports of Drs. Vliestra and Miller. Plaintiff further argues that Dr. Singer's appraisals should carry more weight because he has been treating plaintiff for more than 10 years and since before he was diagnosed with HIV. Plaintiff cites Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003), for the proposition that while "opinions of treating physicians are not entitled to automatic deference in long-term disability claims ... `[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.'" Doc. # 43, p. 12 (quoting Nord, 538 U.S. at 834, 123 S.Ct. 1965). Plaintiff argues that "this Court must conclude that Prudential abused its discretion by applying the [mental illness limitation] and for acting contrary to its own internal guidelines regarding the [mental illness limitation], since its determination failed to establish that Ringwald's condition is exclusively psychological." Id. at 13. Plaintiff concludes that "Prudential abused its discretion acted [sic] solely in its own interests." Id.
With this argument, plaintiff loses sight of the standard of review. The Court is applying a de novo standard in this case, not abuse of discretion. Given the de novo standard, the Court is not concerned with defendant's decision-making process. Rather, the Court is only concerned with whether the ultimate decision was correct, giving no deference to defendant's decision. Accordingly, defendant's alleged failure to accord proper weight to plaintiff's treating physician's opinion and defendant's alleged improper reliance on its *1056 reviewing doctor's reports are irrelevant because the Court gives de novo consideration to the medical evidence in the record and makes an independent determination.
In this case, it is undisputed that defendant paid plaintiff benefits for 24 months. Because he has already received 24 months of benefits, in order to receive any additional benefits, he must be disabled from any gainful employment and his disability must not be due in whole or part to a mental illness. Defendant and plaintiff dispute whether plaintiffs condition prevents him from performing the duties of any gainful employment, but plaintiff's ability to perform any gainful employment is not at issue in the present motion. At issue in defendant's motion is the second requirement for plaintiff to continue to receive benefits after 24 months: that his disability not be due in whole or part to a mental illness.
Defendant's motion for summary judgment contends that, regardless of whether plaintiff is actually disabled from any and all employment, he is not entitled to any further benefits because, to the extent he is disabled, his disability is caused in whole or part by a mental illness. Plaintiff argues that the mental illness limitation does not apply because "Prudential's own guidelines explain that the limitation can only be applied when the disability is exclusively due to a psychiatric condition." Doc. # 43, p. 10. Plaintiff further argues that "the burden was on Prudential to establish that Mr. Ringwald was disabled exclusively due to a mental illness." Id. Finally, he argues that the mental illness limitation is ambiguous and not applicable. In sum, the issue in dispute in defendant's motion for summary judgment is the applicability of the mental illness limitation.

Burden of Proof
The parties raise the issue of who has the burden of proof regarding the mental illness limitation. Plaintiff argues that the mental illness limitation is an exclusion upon which defendant has the burden of proving that his disability is due to a mental illness in order to deny benefits. Defendant argues that it is a condition precedent, which plaintiff must prove that he has satisfied in order to obtain benefits.
When a requirement is "a prerequisite for entitlement to a benefit under an ERISA plan, the burden of proof will generally be on the plan participant." Mario v. P & C Food Markets, Inc., 313 F.3d 758, 765 (2d Cir.2002). When a requirement "is set forth in the `exclusions' section of the plan, the burden is usually on the plan sponsor, who must prove that the exclusion applies." Id. Thus, when a question arises as to the burden of proof, the Court must determine whether the language at issue is tied to the benefits section of the policy or the exclusions section. See Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir.1992).
Examining the language of the Plan, it does not have clearly labeled benefits and exclusions sections. Instead, it begins by defining disability and describing the benefits provided. The Plan indicates that some disabilities have a limited benefits period, namely partial disabilities and mental illnesses. In a later section, the Plan states which disabilities are not covered under the Plan, such as intentionally self-inflicted injuries. The Plan states that the participant must submit proof of his claim and that the proof must show documentation of the disabling disorder, the extent of the disability, and the names and address of any doctors, hospitals, and institutions with which the participant treated. The Plan further provides that defendant may request proof of continuing disability.
The Court finds that the Plan is ambiguous as to whether the mental illness limitation is a condition precedent or an exclusion because it is reasonably susceptible *1057 to the two interpretations proposed by the parties. The Court finds that the ambiguity can be resolved by examining the language of the mental illness limitation in the context of the structure of the Plan and without reference to extrinsic evidence. The Court finds that the mental illness limitation is tied to the benefits section of the policy, not the exclusions. The Plan places the burden on plaintiff to provide proof of his disability and its extent. After 24 months of benefits have been paid, the burden rests with the Plan participant to establish entitlement to continued benefits by proving both that he is unable to perform the duties of any gainful employment and that his disability is not due in whole or part to mental illness. Thus, the burden of proof is on plaintiff to establish that his alleged disability is not due in whole or part to mental illness.
In his burden of proof argument, plaintiff argues that defendant's guidelines require that his disability be "exclusively due to a psychiatric condition" in order for the mental illness limitation to apply. Plaintiff fails to cite any portion of the record showing such a guideline, and plaintiffs contention is in direct contradiction to the plain language of the policy, which states that disabilities "due in whole or part to mental illness have a limited pay period." Doc. # 9-1, p. 32 (emphasis added). Thus, the Court rejects plaintiffs opposition to the motion with respect to the argument that the disability must be exclusively due to a psychiatric condition in order to apply the limitation.

Construction of the Mental Illness Limitation
Plaintiff has never denied that his disability was due in part to depression. Plaintiffs case is based on the argument that his depression has a physical, rather than a purely mental, etiology. He alleges that this entitles him to benefits because the term "mental illness" in the Plan is ambiguous, the ambiguity must be resolved against defendant, and must be resolved to exclude depression with a physical basis from the definition. Specifically, he states that "[t]he term `mental illness' is ambiguous because it fails to set forth whether sicknesses, illnesses, or diseases should be classified based on etiology or physical manifestation." Doc. # 43, p. 14. Plaintiff cites numerous cases in which courts were required to interpret whether certain brain-related illnesses fell within the definition of the term "mental illness" or some other similar term. These cases turn to distinctions between illnesses with an organic, physical basis and illnesses with no demonstrable organic or physical basis. Plaintiff attempts to categorize his illness as one with an organic or physical basis. He argues that it, accordingly, is not considered a mental illness under the Plan and that the mental illness limitation does not apply.
The cases upon which plaintiff relies were interpreting plans in which terms like "mental illness" were not defined. The courts in these cases found that, when undefined, terms like "mental illness" were ambiguous.[2] The courts turned to principles *1058 of plan interpretation in order to resolve the ambiguities. Plaintiff cites only two cases in which "mental illness" or "mental disorder" were defined within the policy, Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc., 125 F.3d 794 (9th Cir.1997), and Dorsk v. UNUM Life Insurance Cos. of America, 8 F.Supp.2d 19 (D.Me.1998). In Lang, the term "mental disorder" was defined as a "mental, emotional, behavioral, or stress-related disorder." 125 F.3d at 796. The court found this general definition of the term to be ambiguous and resolved the ambiguity by finding that the term "`mental disorder' does not include `mental' conditions resulting from `physical disorders.'" Id. at 799. In Dorsk, the plan defined the term "mental illness" as "mental, nervous or emotional diseases or disorders of any type." 8 F.Supp.2d at 21. The court found the use of the term "mental disorder" within the definition of "mental illness" to be ambiguous and construed the term "mental disorder" to exclude disorders with organic causes. Id. at 22-23.
The present case is distinguishable from the all of the cases cited by plaintiff because the term "mental illness" is clearly defined by the Plan. The Plan's definition of "mental illness," quoted in full above, explicitly includes depression and bipolar illness, regardless of cause. Doc. # 9-1, p. 33. For purposes of this case, as defined, the term "mental illness" is not reasonably susceptible to more than one interpretation. Thus, the Court finds that, having been clearly defined by the Plan to include depression and bipolar disorder regardless of cause, the term "mental illness" is not ambiguous when applied to the facts of this case and whether plaintiffs depression and bipolar disorder have physical or nonphysical bases is not controlling.
Thus, with regard to the construction of the mental illness limitation, the Court notes the following: (1) the Plan specifically includes both depression and bipolar disorder in its definition of mental illness; (2) the Plan specifically states that these illnesses are mental illnesses regardless of their causes; (3) the Plan further clarifies that mental illnesses, as defined by the Plan, are usually treated by mental health providers using psychotherapy or psychotropic drugs; and (4) the Plan indicates that the mental illness limitation applies if the disability is due in whole or part to depression or bipolar disease.

Merits Analysis
In his June 2006 letter to defendant, Dr. Singer, upon whom plaintiff relies to oppose summary judgment, attributed plaintiffs disability to his "persistent depression." Doc. # 10, p. 225. In his September 2007 letter to defendant, Dr. Singer attributed plaintiffs disability, in part, to his bipolar disorder. In his January 2008 letter, plaintiffs attorney admitted that plaintiff suffered from bipolar disorder. Plaintiffs attorney did not deny that plaintiff was disabled by the bipolar disorder but instead insisted that the condition *1059 was physical, not mental, and implored defendant to consider the "co-morbidity" of his symptoms. Plaintiff's opposition to the motion for summary judgment admits that he was disabled because of depression. Defendant's reviewing expert, Dr. Gerson, provides plaintiff with the only evidence in the record indicating his mental illness did not contribute to his inability to work in his December 1, 2006, letter. Yet, Dr. Gerson immediately changed his opinion after speaking with plaintiffs treating psychiatrist and recommended in his December 12, 2006, letter that plaintiff was disabled by his mental illness. For his depression and bipolar disorder, plaintiff was treated by mental health providers, including both a psychiatrist and a psychologist, and he was treated with psychotropic drugs.
Taking into account the overwhelming evidence that plaintiffs inability to work was caused by depression and bipolar disease, including his admission of that fact, combined with the Court's review of plaintiff's medical records, the reports of plaintiff's treating physicians, and the reports of defendant's reviewing physicians, the Court finds that it is beyond dispute that plaintiff's alleged inability to perform the duties of any gainful employment was due at least in part to mental illness as defined by the Plan. Because plaintiffs inability to work was due in part to mental illness, defendant did not breach the terms of the Plan by limiting plaintiff's benefits to 24 months, and defendant is entitled to judgment as a matter of law.[3]See Walke v. Group Long Term Disability Ins., 256 F.3d 835, 842 (8th Cir.2001) (holding that summary judgment should have been granted in defendant's favor with respect to mental illness limitation because plaintiffs illness met definition of mental disorder in benefits plan); Stauch v. Unisys Corp., 24 F.3d 1054, 1056 (8th Cir. 1994) (holding that summary judgment was proper when plaintiffs illness fell within the mental illness limitation of the policy).
For the above stated reasons,
IT IS HEREBY ORDERED that defendant Prudential Insurance Company of America's motion for summary judgment [Doc. # 41] is granted, and a corresponding judgment will issue this day.
NOTES
[1] Plaintiff denies this fact and several others in response to defendant's statement of uncontroverted facts. The Local Rules provide that "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." E.D. Mo. L.R. 4-7.01(E). Plaintiff's denials are unsupported by any citation to the record. Accordingly, the facts denied by plaintiff are deemed admitted pursuant to Local Rule 4-7.01(E).
[2] See Patterson v. Hughes Aircraft Co., 11 F.3d 948, 950-51 (9th Cir.1993) (finding the term "mental disorder" ambiguous when the plan did not define the term); Phillips v. Lincoln Nat'l Life Ins. Co., 978 F.2d 302, 310-11 (7th Cir.1992) (holding that "the Plan term `mental illness' is ambiguous as applied to individuals like [the plaintiff] who have mental disorders caused by organic illnesses" when "the Plan contains no definition or explanation of the term `mental illness,' and offers no illustration of the conditions that are included or excluded"); Brewer, 921 F.2d at 154 (defining "mental illness" based on symptoms when policies at issue did not define the phrase "mental illness"); Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 541 (9th Cir.1990) (concluding that the term "mental illness" was ambiguous when "[t]he policy contains no definition or explanation of the term `mental illness,' and offers no illustration of the conditions that are included or excluded" and does not "contain any language suggesting whether the cause of the manifestation determines whether an illness is covered"); Luton v. Prudential Ins. Co. of Am., 88 F.Supp.2d 1364, 1373 (S.D.Fla.2000) (concluding that undefined term "mental illness" was ambiguous); Malerbi v. Cent. Reserve Life of N. Am. Ins. Co., 225 Neb. 543, 407 N.W.2d 157, 163 (1987) (finding an ambiguity in the policy when "[n]either mental illness nor mental condition are defined in the policy"); Simons v. Blue Cross & Blue Shield of Greater N.Y., 144 A.D.2d 28, 536 N.Y.S.2d 431, 434-35 (1989) (interpreting whether the plaintiff's condition was "psychiatric" when that term was not specifically defined by the policy at issue); Ark. Blue Cross & Blue Shield, Inc. v. Doe, 22 Ark. App. 89, 733 S.W.2d 429, 430-32 (1987) (upholding trial court's determination that bipolar affective disorder was a physical illness, rather than a mental or psychiatric condition, when "[t]he policy did not define either mental or psychiatric conditions").
[3] The Court previously found that the mental illness limitation was a condition precedent and that plaintiff had the burden of proving that his disability was not due in whole or part to mental illness in order to receive benefits beyond 24 months. Upon this record, the Court finds that it would reach the same result even if the mental illness constituted an exclusion upon which the defendant had the burden of proof because defendant has affirmatively established that plaintiff's disability was due at least in part to mental illness.