In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1701

STEPHANIE DORRIS,

*Plaintiff-Appellant,*

*v.*

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:16-cv-00508 — **Staci M. Yandle**, *Judge.*

ARGUED NOVEMBER 7, 2019 — DECIDED FEBRUARY 3, 2020

Before HAMILTON, SCUDDER, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Courts and practitioners frequently say that § 502 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), provides for "de novo review" of certain decisions relating to welfare plan benefits. That phrase is really a misnomer. At least in this circuit, ERISA de novo review requires no review at all, but an independent decision. In such a case, the plaintiff bears the burden

of proving not that the plan administrator erred, but that she is entitled to the benefits she seeks.

Stephanie Dorris did not fully recognize her burden. After her disability insurance provider, Unum Life Insurance Company of America, terminated her benefits, she fought hard to prove that Unum's explanation for its decision was wrong. She convinced the district court that it was, so the court proceeded to decide whether Dorris was then entitled to benefits. It saw barely a thing in the administrative record going to that question, and no attempt from Dorris to supplement the record. Based on this lack of evidence, the court entered judgment in Unum's favor. On appeal, Dorris contends that some of the evidence proved her entitlement to benefits, or alternatively, that the district court should have given her the opportunity to supplement the record after judgment. Because we see no clear error in the district court's factual findings nor an abuse of discretion in its decision to limit itself to the record before it, we affirm the judgment.

## I. Background

About two decades ago, Dorris served as the president of Beans Plus, Inc., which offered its employees a long-term disability insurance plan through Unum. The plan covered employees who met a three-pronged definition of disability.

Under the first prong, the employee had to demonstrate that, "because of injury or sickness," she "cannot perform each of the material duties of [her] regular occupation." This showing alone would be enough for the employee to obtain benefits for the first two years of her disability.

To maintain benefits after two years, an employee was required to provide Unum proof of continued disability under

either one of the remaining two prongs. If she proceeded under the second, she would have to show that she "cannot perform each of the material duties of any gainful occupation for which [she is] reasonably fitted by training, education, or experience." We refer to this as the "any occupation" option. Alternatively, under the third prong, she could show that she is (a) "[p]erforming at least one of the material duties of [her] regular occupation or another occupation on a part-time or full-time basis," and (b) "[c]urrently earning at least 20% less per month than [her pre-disability income] due to that same injury or sickness." This we call the "20% less" option.

## A. Dorris's Disability

Throughout the 1990s and 2000s, Dorris suffered from severe pain linked to endometriosis. This pain eventually became disabling, which prevented her from continuing her duties as Beans Plus's president, and Unum started paying her benefits in 2002. A few years later, a doctor diagnosed Dorris with Lyme disease as well. By 2007, the Social Security Administration agreed that her Lyme disease, endometriosis, and other impairments were disabling and granted benefits. As far as the record shows, the Social Security Administration never sought additional evidence from Dorris after 2007.

Unum, in contrast, would frequently review Dorris's case to check for her continued disability. In 2013, its review led it to maintain benefits, but its consultant noted that Dorris's functional abilities were improving and, if this persisted, she might be able to return to work. By this point her endometriosis symptoms had subsided and her primary diagnosis had shifted to Lyme disease.

Unum reviewed Dorris's case again in 2015, starting with a phone call to Dorris to ask how she was faring. She told Unum that she was improving and had started golfing nine holes a week and volunteering. She had a three-hour weekly shift as a docent for the St. Louis Zoo and a position as treasurer of a non-profit called Art on the Square, which ran an annual art show. Unum's sleuthing revealed she was also an active member of a group protesting a hospital's decision to move out of Belleville, Illinois.

Dorris's doctors also provided information to Unum. Her Lyme disease specialist, Dr. Steven Harris, informed Unum that Dorris was still experiencing fatigue, headaches, nausea, dizziness, insomnia, and joint and muscle pain because of her Lyme disease. His records noted both improvements and regressions in Dorris's self-reports.

Unum later sent a letter to Dr. Harris in which it defined the terms "light" and "sedentary" work consistent with the Department of Labor's Dictionary of Occupational Titles and the Social Security Administration's regulations, 20 CFR § 404.1567(a)–(b), and asked if Dorris could work at either level of exertion. He responded that she could perform sedentary work part-time, no more than four hours a day and with frequent breaks and absences. Under a line asking him to identify the limitations supporting his opinion, Dr. Harris wrote "N/A." When Unum followed up, Dr. Harris elaborated that Dorris suffered from "extreme fatigue" and "major memory and cognitive issues" (as well as nausea, migraines, cramps, and aches), so she could not work at all, for fear of stress exacerbating her symptoms. Dorris's other doctors, including her primary care physician, deferred to Dr. Harris.

With Dorris's medical records in hand, Unum hired two consulting physicians to review the file to see whether she could return to her regular occupation as a president—a sedentary job that required, among other things, the frequent use of mental functions. The first doctor determined that the evidence did not show limitations that would preclude such work. He acknowledged that Dorris continued to complain of fatigue and pain, but thought her reported activities were out of proportion to her complaints. He ruled out ongoing Lyme disease as a disabling impairment because he saw no evidence of an active infection. The second consulting physician concurred. He too doubted that Dorris had Lyme disease and found that whatever fatigue she had did not preclude her active lifestyle. Shortly thereafter, Unum ended Dorris's benefits because it concluded that she could perform the duties of her regular occupation.

## B. Administrative Appeal

Dorris appealed, criticizing Unum's apparent focus on only the physical demands of being a president. She had worked 70-hour weeks, she asserted, and needed constant mental focus during that time. Furthermore, she noted that Unum had never considered whether she could meet the standards of the any occupation or 20% less options.

In her appeal, she offered new evidence and qualified her activities. She explained that she missed golf matches, docent shifts, and protests frequently. And, as treasurer for Art on the Square, she worked only one hour a week, with no deadlines. Fellow volunteers wrote letters to support her story. Dr. Harris also supplemented his opinion of Dorris's limitations. Returning to the long hours and stressful work of a president

would increase Dorris's symptoms, he said, and her limited activities did not undermine that conclusion.

Unum obtained another consulting physician, Dr. Scott Norris, for its appeal review. He agreed with the prior consultants that Dorris likely was not suffering from Lyme disease and could work as a president. Unum's vocational consultant, Richard Byard, then updated the definition of the material duties of a president to reflect a need to work more than forty hours a week and to travel occasionally. Dr. Norris maintained his assessment after considering this change.

Months after Dorris submitted her appeal, Unum requested that she participate in an independent medical examination at its expense. Dorris objected to this request because Unum was taking longer to resolve her appeal than regulations permitted. *See* 29 C.F.R. § 2560.503-1(i). Unum asked one more time for an extension to perform an examination, received a similar answer, and then two days later (a day before the regulatory deadline) denied Dorris's appeal, concluding that she could return to her job as president.

## C. District Court Proceedings

Dorris then proceeded to the district court with this suit to recover benefits under ERISA § 502, 29 U.S.C. § 1132(a)(1)(B).

Early in the case, Dorris asked to depose Byard (the vocational consultant), Dr. Norris, and three others who worked for Unum, as well as Dr. Harris and her fellow volunteers on her side. Unum objected and sought a protective order because these depositions would rehash evidence already in the administrative record. Dorris admitted she wanted to depose the witnesses for clarification purposes, and the magistrate judge understood that to mean that Dorris was not looking to

introduce new evidence. Dorris could use her briefs to high-light any problems in the record, the judge decided, and he granted the protective order, carefully noting that his ruling did not prevent Dorris from requesting any other discovery consistent with Rule 26. Dorris, however, never sought any further discovery; nor did she object to the magistrate judge's ruling before the district judge.

Eventually, the parties filed cross-motions for judgment on the administrative record under Federal Rule of Civil Procedure 52. They vigorously disputed the merits of the medical evidence and whether Dorris was disabled from her regular occupation as president. Unum argued that Dr. Harris was exaggerating (if not fabricating) his assessment; Dorris criticized Unum's doctors for lacking expertise in Lyme disease. The other prongs of the plan's disability definition fell to the wayside. Unum all but ignored the 20% less option and referred only occasionally to the any occupation option. It rested on its physician's conclusions that Dorris could perform the duties of president and emphasized that it was Dorris who carried the burden of proof on all issues.

Dorris did not dispute the placement of this burden, but nevertheless drew attention to the lack of vocational evidence in the record. Unum had never considered what occupations for which she was reasonably fitted or, for that matter, the material duties of any job other than president, as relevant to the any occupation option. She offered nothing of her own on these points. Her resume was the only evidence she cited, and it essentially listed job titles: president, staff accountant, senior litigation consultant, chief financial officer, corporate controller, and vice president of finance. She asserted, without

evidence, that each of these jobs required "working 55–70 hours a week, 5–7 days a week, 48–50 weeks per year."

Her arguments based on the 20% less option were conclusory—she simply declared that she met that definition without identifying how. The closest she came to an explanation was a single line, in the fact section of her response brief, where she said her treasurer work "included a few of the material duties of a CPA/Accountant, such as paying bill[s] and reconciling bank accounts." The remainder of her factual account, like her administrative appeal, focused on how little— not what—she did as a volunteer.

Besides the administrative record, the only other evidence either party submitted related to Dr. Harris's qualifications. Unum provided documents regarding another patient's accusation that he had committed malpractice in the treatment of Lyme disease and Dorris responded with evidence that the claim was unfounded.

The district court recognized that it could consider this additional evidence, but elected not to do so, as it did not shed any light on any of the dispositive issues in the case. The court, thus, limited its review to the administrative record. The parties agreed that this review would be de novo, because the plan gave Unum no discretion.

The court first found that Dorris could not perform the duties of her regular occupation. It afforded more weight to Dr. Harris's opinions than those of Unum's physicians, as Dr. Harris was Dorris's treating physician and had seen his patient, not just her records. Based on this evidence, the court found that Dorris could not perform the material duties of a president—especially the frequent use of high-level mental

functions for more than forty hours per week. She therefore met the initial requirement for continuing disability.

But that did not end the court's analysis. Looking to the other two prongs of the plan definition, the court found nothing of significance in the record. It acknowledged Dorris's point that Unum had not conducted a vocational analysis but emphasized that she, not Unum, carried the burden of proof. Dorris could have possibly met her burden with a vocational analysis or other evidence describing the demands of other occupations, the court said, but she produced nothing of the sort. Her conclusory assertions were not enough for the court to find that she met either the any occupation or 20% less options, and so it entered judgment for Unum.

Dorris timely moved to amend the judgment. Fed. R. Civ. P. 59. She argued that the court had overlooked that both Dr. Harris and the Social Security Administration had found her incapable of any work, and, thus, by implication, from a gainful occupation. Alternatively, she asked to reopen discovery.

The district court denied the motion. It explained that it had not overlooked the Social Security decision nor Dr. Harris's opinions, neither of which provided the vocational evidence the court was looking for and found lacking. They did not identify the demands of relevant gainful occupations or show that those demands were prohibitive. Regarding discovery, the court found no error in its decisions. Rather, the error Dorris was seeking to correct was her own because she had never objected to the magistrate judge's order.

## II. Discussion

The parties do not quarrel about the general framework of this appeal. Because the plan did not give Unum discretion,

the district court appropriately reviewed the administrative record de novo under the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). In turn, we accept the district court's factual findings unless clearly erroneous. Fed. R. Civ. P. 52(a)(6); *Cheney v. Standard Ins. Co.*, 831 F.3d 445, 450 (7th Cir. 2016).

Unum does not challenge the district court's finding that Dorris was incapable of working as a president. We, therefore, accept that finding. The question then is what happens next. The plan definition of disability does not stop at whether Dorris can return to her regular occupation. It also asks about her capacity to work other occupations. Neither party seriously addressed these issues in the administrative proceedings or in the district court, so the record is essentially silent on them. We, like the district court, must decide who that impacts.

The answer lies in the concept of ERISA de novo review, which we have described as a "misleading phrase." *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009). The confusion comes from the word review, "[f]or what *Firestone* requires is not 'review' of any kind; it is an independent *decision*," akin to a contract dispute. *Id.*; *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007); *see also Cheney*, 831 F.3d at 450 (interpreting policy terms under federal common law and general principles of contract interpretation). So, we have said that what happened before the plan administrator is irrelevant in a de novo review case. *Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 328 (7th Cir. 2012); *Diaz*, 499 F.3d at 643. The court can limit itself to deciding the case on the administrative record but should also freely allow the parties to introduce relevant extra-record evidence and seek appropriate discovery. *Marantz*, 687 F.3d at

328; *Krolnik*, 570 F.3d at 843; *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 490 (7th Cir. 2007). The plaintiff is the one who is obligated to prove she is entitled to benefits, so any gaps in the record cut against her claim. *Cheney*, 831 F.3d at 451; *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 663 (7th Cir. 2005). She should be permitted to patch these gaps before the court reaches final judgment.[1]

By contrast, in ERISA benefits claims subject to arbitrary and capricious review because the plan gives the administrator discretion, we generally do not look to any evidence beyond what the administrator considered. *E.g., Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 674 (7th Cir. 2018). In such a case, it is the administrator's burden to provide an explanation for its decision consistent with the record and ERISA. *Tate v. Long Term Disability Plan for Salaried Emps. of Champion Int'l Corp. No. 506*, 545 F.3d 555, 561 (7th Cir. 2008), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010). If the administrator did not explore an issue that it should have, a court typically does not enter final judgment on the underlying claim but remands so that the administrator can reconsider. *Id.* at 563.

The consequences of the different approaches are easily demonstrated. In *Pakovich v. Broadspire Services, Inc.*, 535 F.3d 601 (7th Cir. 2008), we addressed a case in a nearly identical

---

[1] The Courts of Appeals have divergent views of how and when a district court can accept evidence outside of the administrative record in de novo review cases and some prohibit it entirely. *See, e.g., Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 256 (5th Cir. 2018) (en banc) (describing circuit split and prohibiting extra-record evidence); *Patton*, 480 F.3d at 490 & n.7 (collecting cases). Our position is settled and Dorris does not argue otherwise or ask us to revisit this issue.

posture to this one except under arbitrary and capricious re-
view. Like Unum, the administrator had terminated disability
benefits because it concluded that Pakovich could perform
her own occupation. *Id.* at 603. As here, the district court dis-
agreed and moved on to the second requirement of disability
under the plan: whether Pakovich could perform the func-
tions of "any occupation." *Id.* The administrator had not con-
sidered or addressed this issue, and the district court found
no evidence in the record supporting such a finding, so it en-
tered judgment for the defendant. *Id.* We reversed. Because
the administrator had not reached the issue of Pakovich's eli-
gibility under the "any occupation" standard, the record was
undeveloped on this point, and the district court had "noth-
ing to review." *Id.* at 607. We therefore sent the case back to
the administrator to address the issue in the first instance. *Id.*

The district court here, too, had an undeveloped record re-
garding the any occupation and 20% less options. But unlike
in *Pakovich*, the court's lack of a decision to review was not a
hindrance, because it was not tasked with reviewing anything
in the first place. The question it had to answer was whether
Dorris was entitled to benefits. In addressing that question,
Dorris, as the plaintiff, carried the burden of proof, absent
contrary language in the plan. Accordingly, the court could
not resolve any gaps in the record in her favor. *Cheney*, 831
F.3d at 451. If neither party sought to produce necessary evi-
dence, then judgment was properly entered in Unum's favor.

Dorris contends that vocational evidence was not neces-
sary to satisfy the any occupation prong and, so, the district
court erred in demanding it. She relies on our decision in *Tate*,
where we said that "there is nothing in our case law" requir-
ing a claimant to provide vocational evidence "as long as she

provides evidence that she has an impairment that affects her ability to work." 545 F.3d at 562. In her view, she met this requirement through Dr. Harris's opinion that she could not perform any sedentary work and the Social Security Administration's 2007 benefits decision, finding the same.

Dorris may be right that the district court could have ruled in her favor even absent vocational evidence. If the medical evidence showed that Dorris was utterly immobile and incoherent, we would not affirm the denial of benefits simply because a vocational expert never opined that mobility and coherence are valued in the job market. To demonstrate clear error, though, it is not enough for an appellant to point to evidence in the record that supports her claim. *Mathin v. Kerry*, 782 F.3d 804, 810 (7th Cir. 2015). Dr. Harris's opinion comes close enough to declaring complete disability, and the Social Security opinion does declare it, so either could have carried Dorris's burden. But the district court found they did not. On clear-error review, we will affirm that finding if it is "plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

The district court's findings were not only plausible but eminently reasonable on this limited record. Even in the best of circumstances, a Social Security decision is only "one more factor for consideration in an ERISA benefits determination." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 748 (7th Cir. 2009). The decision here was nearly a decade old and relied on Dorris's endometriosis, which is no longer debilitating, so the court justifiably discredited it.

Dr. Harris's opinion was more recent, but the court was not obligated to adopt it wholesale and exclude Dorris from all sedentary jobs just because the doctor did. Instead, the

court gave Dr. Harris's opinion more weight than Unum's doctors' opinions only to the extent that his was supported by evidence and explanation. Dr. Harris drew special attention to how stress would increase Dorris's symptoms. Without such stress, his opinion has little else to stand on. The occupation of president is a demanding one, so the court found that Dorris could not reliably handle it. Not all jobs are so taxing, however, and Dorris may not have been foreclosed from some other, easier sedentary job.

This gap is where vocational evidence became necessary. Perhaps all "gainful" occupations for which Dorris is "reasonably fitted" are just as stressful as company president. She offered no evidence, only assertions, on that question. She continues to insist that the only jobs for which she is reasonably fitted are those in her resume, and that each of these jobs is either "sedentary" or "light." Even if she is right, no evidence in the record shows that a "staff accountant," for example, is required to work any more than 40 hours a week or use her high-level mental functions on a frequent basis, as a president must. The job might demand that much (or more), or those staff accountant positions that require less might pay too little to be "gainful" for Dorris. The district court had no evidence either way. Neither do we, so we cannot say the district court clearly erred in finding that Dorris failed to carry her burden under the any occupation option.[2]

---

[2] Given the complete lack of vocational evidence here, we need not consider how far a claimant's burden goes on an "any occupation" standard or whether the burden would ever shift to the administrator to identify a job the plaintiff could perform.

Dorris next argues that, even if her evidence falls short under the any occupation option, she meets the 20% less option. She notes she was unemployed, so she obviously made less than 80% of her pre-disability salary. The plan requires that she perform "at least one of the material duties of [her] regular occupation or another occupation on a part-time or full-time basis." Any duty, she argues, is tautologically either a duty of her regular occupation or another occupation. She points to her hour a week as a volunteer treasurer as meeting this standard. If her duties there were not those of a president, she reasons, then they must have been the duties of some other job. Alternatively, in her reply brief, she compares her three-hour weekly shift as a docent to her job as a corporate president because both require "dealing with people."

Dorris, however, never presented an argument along these lines to the district court. Unum, thus, contends that she waived any argument under the 20% less option. We agree and do not decide whether Dorris's interpretation of the plan is correct. *See CNH Indus. Am. LLC v. Jones Lang LaSalle Ams., Inc*, 882 F.3d 692, 704–06 (7th Cir. 2018) (declining to interpret contractual provision not argued to district court).

A party generally waives arguments raised for the first time on appeal. *See Villas at Winding Ridge v. State Farm Fire & Cas. Co.*, 942 F.3d 824, 832 (7th Cir. 2019). Even arguments that a party presented to the district court can be waived, if they were "underdeveloped, conclusory, or unsupported by law." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Dorris's argument under the 20% less option was all three.

Although she asserted that she met the requirements for the 20% less option, the district court noted that she provided "no evidence or explanation" to support that assertion. She

cited no legal authority and included only one sentence of justification in the fact section of her response brief. Burying an argument in one's brief does not preserve it for appellate review. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs."); *cf. Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 529 (7th Cir. 2003) (finding appellate issue waived when it was addressed only in statement of facts). We decline to find that the district court clearly erred in its assessment of an argument never actually argued to it and thereby "undermine the essential function of the district court." *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019) (quoting *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 720 (7th Cir. 2008)).

Finally, Dorris challenges the district court's decision to limit itself to the administrative record and to deny her motion to amend the judgment. We review both decisions for an abuse of discretion. *See Barrington Music Prod., Inc. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th Cir. 2019) (motion to amend judgment); *Patton*, 480 F.3d at 490 (limitation of record).

According to Dorris, it was inconsistent for the district court to find that the administrative record provided an adequate basis for its decision and to then rule against her because the record was underdeveloped. We see no inconsistency because Dorris never offered—and the court never rejected—relevant extra-record evidence. All the court had before it was the extraneous evidence of Dr. Harris's alleged malpractice. No one argues that it was error to exclude that.

This is not a case like *Krolnik*, where the district court denied reasonable discovery and refused to consider even evidence the plaintiff procured at his own expense. 570 F.3d at

843. Dorris offered nothing and sought only duplicative discovery, which the magistrate judge properly denied. *See id.* In doing so, he noted that the protective order would not stop Dorris from seeking any other discovery consistent with the rules of civil procedure. She elected not to seek anything further. Moreover, Dorris never objected to the protective order, and "[a] party may not assign as error a defect in the [magistrate judge's] order not timely objected to." Fed. R. Civ. P. 72(a); *Davis v. Kayira*, 938 F.3d 910, 916 (7th Cir. 2019).

The district court also was not obligated to reopen discovery after the judgment. A motion to amend the judgment under Rule 59 is not "a vehicle for a party to undo its own procedural failures." *Barrington Music Prods.*, 924 F.3d at 968 (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013)). Dorris appears to have believed that the lack of vocational evidence in the record favored her. She was wrong. Unum's motion for judgment emphasized that it was her burden to prove entitlement to benefits under the plan and argued that she failed to meet that burden. If this burden was a surprise, she could have moved to reopen discovery when Unum sought judgment. She was not entitled to wait until after Unum won. *See Cincinnati Life*, 722 F.3d at 954 (affirming denial of Rule 59 motion when appellant mistakenly believed issue was outside scope of district court proceedings).

### III. Conclusion

The district court was presented with an underdeveloped administrative record. From this record, it concluded that Dorris failed to carry her burden, as the plaintiff, to demonstrate she was entitled to benefits. We see no clear error in that finding or abuse of discretion in the limitation of its review to the administrative record. We therefore affirm the judgment.