In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-1121

SCOTT SCANLON,

*Plaintiff-Appellant,*

*v.*

LIFE INSURANCE COMPANY OF NORTH AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-00744 — **Charles R. Norgle**, *Judge.*

ARGUED NOVEMBER 9, 2022 — AUGUST 31, 2023

Before ROVNER, JACKSON-AKIWUMI, and LEE, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* Scott Scanlon is a U.S. Army veteran with a history of chronic pain and sleep disorders. He sought long term disability benefits pursuant to his employer's group policy with the Life Insurance Company of North America ("LINA"). When LINA denied his claim, Scanlon sought de novo review in the district court under the Employee Retirement Income Security Act of 1974, 29 U.S.C.

§ 1132. The district court found Scanlon not entitled to bene-
fits, so Scanlon filed this appeal. We conclude that the district
court clearly erred when it failed to consider Scanlon's inabil-
ity to sit at his desk for eight hours a day as required by his
occupation and his inability to perform the cognitive require-
ments of his job during regular work hours. The district court
also erred in its treatment of certain medical records Scanlon
provided. We therefore vacate and remand.

## I

In October 2017, Scanlon went on temporary leave from
his job as a Windows Systems Administrator at the McKesson
Corporation. He requested certain accommodations to return
to work; McKesson temporarily granted some, but not all, of
them. Scanlon did not return to work. Instead, Scanlon sought
long term disability insurance benefits pursuant to a
McKesson group policy underwritten, insured, and adminis-
tered by LINA.

To meet the definition of "disabled" under the policy, an
employee must be unable to: (1) perform the "material duties"
of the employee's regular occupation and (2) earn 80% or
more of the employee's indexed earnings from working in the
employee's regular occupation. The policy defines "regular
occupation" as "[t]he occupation the Employee routinely per-
forms at the time the Disability begins." In evaluating a disa-
bility claim, LINA "consider[s] the duties of the occupation as
it is normally performed in the general labor market in the
national economy," as opposed to the roles and responsibili-
ties of an employee working for a specific employer.

LINA initially denied Scanlon's request for disability ben-
efits because he did not provide sufficient evidence. It then

denied two administrative appeals after Scanlon supplied the requested documentation. In the process, LINA asked two medical examiners, Drs. Joseph Sentef and Krishna Padiyar, to review Scanlon's claims of disability. Both doctors concluded that Scanlon was not entitled to long term disability benefits.

Scanlon filed a complaint in the district court seeking de novo review of LINA's denial of benefits. Scanlon supplied the court with the evidence presented to LINA during administrative adjudication, and with supplemental records. The district court found that Scanlon suffered from myriad chronic orthopedic and sleep disorders that cause him pain and impact his daily life. Nevertheless, the court found Scanlon ineligible for long term disability benefits under LINA's policy because Scanlon did not show, by a preponderance of the evidence, that he cannot perform the material duties of his job.

The district court described in detail the medical evidence provided by Scanlon; we discuss only the evidence relevant to the arguments the parties make on appeal. Broadly, however, Scanlon provided extensive medical history records including: examination reports and letters from his treating providers; records from the Department of Veteran Affairs ("VA"); an August 2018 residual functional capacity evaluation performed by his treating medical provider, Jeffrey Johnson, who is a physician's assistant working under the supervision of Drs. Arpan Patel and Omar Said; and a May 2019 functional capacity evaluation performed by licensed physical therapist Tarek El-Shikh.

## II

Where the insurance plan administrator—here, LINA—does not have discretionary authority to decide benefits eligibility, district courts review ERISA plan benefit denials de novo and independently decide the claimant's eligibility. In these cases, "the plaintiff bears the burden of proving not that the plan administrator erred, but that []he is entitled to the benefits []he seeks." *Dorris v. Unum Life Ins. Co. of Am.*, 949 F.3d 297, 299 (7th Cir. 2020). On appeal, we review the district court's findings of fact and application of law to those findings for clear error. *Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 327 (7th Cir. 2012). We will affirm the district court's findings of fact if they are plausible considering the entirety of the record. *Dorris*, 949 F.3d at 305.

Scanlon argues that the district court erred because it did not appropriately consider and weigh the medical evidence, and did not adequately address the nature and material duties of his occupation. Scanlon further asserts that the district court erroneously accepted Drs. Sentef and Padiyar's conclusions without question and gave them too much weight. We agree with Scanlon in part and address his arguments below. We begin our analysis by identifying Scanlon's job in the national economy and describing its requirements—after all, Scanlon's eligibility for benefits turns on what his job is and whether he can do it. We then turn to the district court's treatment of Scanlon's functional capacity evaluation, his chronic sleep disorders, and the other evidence in record in determining no benefits should issue.

**III**

The parties agree that Scanlon's job as performed in the national economy is that of a Systems Analyst, a job with both physical and cognitive demands. The physical requirement for a Systems Analyst is sedentary work. Such work "involves sitting most of the time, but may involve walking or standing for brief periods of time." Dictionary of Occupational Titles, Appendix C (4th ed. 1991) [hereinafter *DOT, Appendix C*]. A job is sedentary when "standing is required less than or equal to 1/3 of the work schedule or workday." *Factsheets: Strength Levels*, U.S. BUREAU OF LAB. STAT., https://www.bls.gov/ors/factsheet/strength.htm#_edn1 (last accessed July 17, 2023); *see also* DOT, Appendix C ("[j]obs are sedentary if walking and standing are required only occasionally" and occasionally means "up to 1/3 of the time"). For an eight-hour sedentary workday, this means no more than 2 hours and 40 minutes of standing. Other physical requirements for sedentary work include carrying, pushing, or pulling objects, and lifting no more than 10 pounds at a time. DOT, Appendix C.

Systems Analysts must also perform cognitive tasks. These include reviewing and analyzing user requirements and procedures, computer system capabilities, scheduling limitations, and workflow to automate processing or improve existing computer systems; studying existing systems to evaluate effectiveness; developing new, improved systems; performing systems management and integration functions; upgrading systems and correcting errors to maintain systems after implementation; and preparing technical reports, memoranda, and instructional manuals. Dictionary of Occupational Titles 030.167-014. To perform these tasks, Systems Analysts

must confer with others, identify and troubleshoot problems in a timely manner, and improve the systems as required. *Id.*

The district court focused on Scanlon's ability to perform the physical aspects of his Systems Analyst job. The court relied in its analysis on Scanlon's functional capacity evaluation, residual functional capacity evaluation, records and letters from his treating medical providers, records from the VA, and assessments by LINA's medical examiners. We see no issue with the district court's treatment of most of this evidence. Our concern is primarily with the district court's analysis of the functional capacity evaluation, which documented that Scanlon has physical limitations due to his chronic pain. Recall that, eligibility for disability benefits under the policy requires two separate findings: an inability to perform the "material duties" of the job and an inability to earn at least 80% of regular earnings. In its discussion of the functional capacity evaluation, the district court failed to appropriately consider Scanlon's inability to sit for extended periods of time, as required by his occupation, and did not explain how Scanlon can earn 80% or more of his regular income.

Scanlon's functional capacity evaluation was conducted by El-Shikh, a licensed physical therapist. A "functional capacity examination consists of a battery of tests to assess a patient's current physical and functional abilities and potential to return to work." *Marantz*, 687 F.3d at 331. El-Shikh concluded that Scanlon's sedentary occupational base is significantly eroded because he can only sit 15 minutes and stand 45 minutes at a time; and in total, he can sit up to 2 hours 50 minutes and stand up to 4 hours 22 minutes in a day. Thus, Scanlon is unable to work full time. El-Shikh also evaluated Scanlon's ability to lift (19.5 pounds overhead) and carry (29.5

pounds) items, his tolerance for static balance, gross coordination, pinching, and stair climbing (0-33% of the time), and his tolerance for fine coordination, reaching, bending, grasping firmly, kneeling repetitively, squatting, and walking (34-66% of the time).

The primary finding of the functional capacity evaluation—that Scanlon cannot sit longer than 15 minutes at a time and no more than approximately 3 hours a day in total—goes to the heart of whether Scanlon can perform the material duties of his occupation. But the district court neglected to consider this information. In the court's view, the evaluation proved Scanlon "can perform the active physical tasks that his sedentary job requires" because "he has a medium lift capacity and can kneel, squat, climb stairs, walk, and perform fine-motor tasks." We agree the evidence showed Scanlon's capacity to perform these "active physical tasks." But those tasks are unrelated to his ability to sit at a computer for eight hours a day, one of the main physical requirements of his job. *See Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 483 (7th Cir. 2009) (an evaluation determining the claimant could perform medium-level work did not address the "critical qualification that [he] was nevertheless incapable of typing and sitting"); *McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 588 (7th Cir. 1998) (disability insurance coverage available if claimant can show he is "unable to perform enough of the tasks or to perform for a long enough period to continue working at his regular occupation" where the policy required claimant to show he could no longer perform the "material and substantial" duties of his occupation). On remand, the district court must consider Scanlon's ability to sit when analyzing the physical demands of his job.

Scanlon's inability to sit is also relevant to whether he can earn at least 80% of his indexed income as a Systems Analyst, yet the district court's analysis of this issue is wanting. The district court found Scanlon could earn 80% or more of his earnings even with his diminished capacity for sedentary work. We are puzzled by this conclusion; Scanlon's ability to sit does not appear to come close to 80% of his full workday. The district court observed that Scanlon could perform his job 6.5 hours a day, presumably because El-Shikh concluded Scanlon could work for 6 hours and 43 minutes if he alternates sitting with standing. But Scanlon's job requires sitting and he cannot do that for longer than 15 minutes at a time and 2 hours and 50 minutes in total in a day. And even if Scanlon can "do his job for 6.5 hours per day" as the district court found, we are unsure how the district court calculated Scanlon's ability to earn 80% or more of his earnings. The lack of explanation for this conclusion is error. If the district court on remand again finds that Scanlon can earn 80% or more of his regular income, it must explain its reasoning.

LINA, recognizing that Scanlon's inability to sit may be enough to demonstrate he cannot perform the material duties of his job or earn at least 80% of his regular income, posits the work of a Systems Analyst can be performed without sitting for prolonged periods of time or at all. It relies on *Cheney v. Standard Insurance Company*, where we held that "being unable to perform one task is [not] always sufficient for total disability, unless that task is essential to performing the job, as in the case of a shortstop unable to throw or a barber who lost a hand." 831 F.3d 445, 452 (7th Cir. 2016). *Cheney* is inapposite because LINA does not explain how Scanlon can perform his job by standing as opposed to sitting when sedentary occupations like Scanlon's involve limited amounts of standing (as

we noted, no more than 2.7 hours of standing in an eight-hour workday, according to the Department of Labor) and, regardless, chronic pain impairs Scanlon's ability to stand. Contrary to LINA's argument, the evidence demonstrates that Scanlon was required to sit at his computer nearly all day for his sedentary job and chronic pain affected his ability to do so.

We turn our attention back to the functional capacity evaluation. So far, we have accepted its findings without question, as the district court did at the outset of its analysis. But courts are free to weigh the reliability of such evaluations "based on the individual circumstances of the assessment—for example, whether the results are consistent or conflicting with other medical examinations; whether the evaluation took into account reports of pain during and after testing; and whether the test assessed ability over time rather than at one particular moment." *Marantz*, 687 F.3d at 332. There are multiple factors that influence the weight courts must give to functional capacity evaluations, and our analysis ultimately depends on the total mix of facts in a particular case. Here, Scanlon's functional capacity evaluation included an observation that his pain reports "may be considered unreliable" and may warrant further testing. Based on this observation, the district court found that "multiple tests called the reliability of [Scanlon's] pain reports into question." Scanlon argues the district court misinterpreted the report because El-Shikh also determined Scanlon's pain ratings were reliable 75% of the time and Scanlon put forth full effort during the evaluation. We agree with Scanlon that despite expressing some reservations, El-Shikh ultimately concluded Scanlon's pain reports were reliable most of the time. Further, El-Shikh's evaluation of Scanlon's functional limitations was largely supported by the results of the residual functional capacity evaluation

performed by Jeffrey Johnson, a physician's assistant who treated Scanlon's chronic pain for several years. The district court failed to adequately support its finding that the pain reports were not reliable.

The district court also questioned the reliability of the functional capacity evaluation in part because none of Scanlon's treating medical providers "flatly stated that [he] is unable to perform his regular occupation." But we have never required the treating physicians to "flatly" state the claimant's disability to find a functional capacity evaluation reliable. The correct question to ask is "whether the results are consistent or conflicting with other medical examinations." *Marantz*, 687 F.3d at 332. As the district court recognized, Scanlon's treating providers consistently reported that he suffered from severe chronic pain and sleep disorders "that cause him pain and impact his daily life." That is consistent with El-Shikh's assessment that Scanlon exhibited pain during the evaluations and is unable to work full-time. On remand, the district court must consider the degree to which the opinions of Scanlon's medical providers are consistent with the results of the functional capacity evaluation.

One last note relevant to Scanlon's chronic pain. The district court concluded that Scanlon "has obtained relief through various treatments like painkillers and steroid injections." This was error given that the district court also acknowledged that Scanlon's steroid injections, nerve ablations, and physical therapy provided only temporary relief and did not "eradicate" his pain. Considering the district court's own factual finding of "chronic pain caused by orthopedic impairments," its conclusion that Scanlon received relief from pain is unsupported by the record.

We next turn to the district court's treatment of Scanlon's chronic sleep disorder evidence. The court described the evidence but did not analyze how the evidence affected Scanlon's ability to perform the cognitive requirements of a Systems Analyst job. The district court acknowledged the conclusion by clinical psychologist Dr. James Wyatt, Ph.D., that Scanlon's "sleep and pain disorders impacted his cognition and verbal fluency in conversations." Dr. Wyatt supported Scanlon's request for accommodations at McKesson and opined that Scanlon required shifted and limited work hours, plus indirect (email only) communication with colleagues for routine matters. The district court also observed that Dr. Colleen Durkin confirmed Dr. Wyatt's diagnosis of multiple chronic sleep disorders and documented that Scanlon reported impact on his daily functioning, including communication and cognition. Finally, the district court noted that Dr. Theresa Clark, who reviewed Scanlon's medical and service records for the VA, stated in part that Scanlon was "very symptomatic from his incompletely treated severe" sleep apnea, with "significant limitations in his daily functioning due to nonrestorative sleep and excessive fatigue."

Despite having described all this evidence, the district court did not consider the effect Scanlon's chronic sleep disorders had on his ability to perform the cognitive requirements of a Systems Analyst job. This was error. Scanlon's occupation requires him to confer with others, think critically, and make decisions in a timely and reliable manner. Yet there is record evidence that Scanlon suffers cognitive and communicative impairments due to chronic sleep disorders that affect his ability to perform these duties during regular work hours. On remand, the district court must specifically address

Scanlon's ability to perform the cognitive aspects of his job with the limitations identified in the record.

To undermine Scanlon's evidence of chronic sleep issues, LINA argues Scanlon received accommodations under the Americans with Disabilities Act from McKesson and that if we consider these accommodations, Scanlon does not have cognitive impairments to perform his job. But as the district court correctly found, the insurance policy makes clear that we must evaluate Scanlon's job duties as they are performed in the national economy—not according to how he personally could perform them at McKesson with accommodations. LINA's argument ignores the clear language of the insurance policy. And even if we were to consider the accommodations, we are left with McKesson's denial of Scanlon's request "to work at his own pace when required, as this was deemed a vague and unreasonable request" because Scanlon's role was "often time-sensitive, and timely and efficient responses are requirements for the role." McKesson's justification for denying Scanlon's requested accommodation only underscores Scanlon's point that he cannot perform the cognitive requirements of his job. The district court did not err in its analysis regarding possible accommodations.

## IV

Scanlon criticizes other aspects of the district court's decision, but his criticisms are unavailing. For example, he argues that the district court erred when it afforded little weight to the VA's determination that Scanlon is totally and permanently disabled because, in the court's estimation, the VA's conclusion was largely grounded in psychiatric issues. But the VA's disability determination clearly places emphasis on psychiatric conditions, even if it also considers Scanlon's

chronic sleep and pain issues as a contributing factor. And Scanlon did not base his claim with LINA on his psychiatric medical conditions. There was no error in the district court's approach to the VA evidence.

Scanlon also asserts the district court improperly considered the dates of the functional capacity evaluation and the VA records when weighing the evidence. But the district court did not outright dismiss these records for timing reasons; it merely considered their timing as a factor in evaluating the records. We see no error in the district court's approach. The remainder of Scanlon's arguments, including his assertion that the district court erroneously accepted Drs. Sentef and Padiyar's conclusions without question and gave them too much weight, similarly invite us to reweigh the evidence, which we cannot do on appeal.

We pause to note that the district judge assigned to this case has assumed inactive senior status. On remand, the case will be reassigned to a different judge. Apart from the errors we have identified in this opinion, the new judge is not bound to weigh the evidence the same way the original judge did.

## V

Scanlon's pain and chronic sleep disorders affect his daily life. The district court committed clear error when it failed to consider Scanlon's ability to sit at his desk for eight hours a day and to perform the cognitive requirements of his job during regular work hours. The district court also erred when it found that Scanlon's pain was relieved and his pain reports were unreliable, and when it judged the reliability of the functional capacity evaluation based on whether Scanlon's treating providers had "flatly" found Scanlon to be disabled. We

find no error with the remainder of the district court's analysis. We therefore vacate and remand for further proceedings consistent with this opinion.

VACATED and REMANDED.