In the

# United States Court of Appeals

## For the Seventh Circuit

───────────────

No. 24-2925

OLAYINKA OYE,

*Plaintiff-Appellant,*

*v.*

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

*Defendant-Appellee.*

───────────────

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-03749 — **Edmond E. Chang**, *Judge.*

───────────────

ARGUED MAY 29, 2025 — DECIDED JUNE 12, 2025

───────────────

Before EASTERBROOK, BRENNAN, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Asserting that her fibromyalgia prevented her from working, Olayinka Oye applied for benefits through her employer's long-term disability plan, administered by Hartford Life and Accident Insurance Company. Hartford determined Oye was disabled, but later reevaluated her condition, found her fit to work, and terminated benefit payments. Oye reacted by filing this suit, seeking a federal

district court's review of her benefits claim. In a detailed and diligent opinion, the district court found that Oye's fibromyalgia, while limiting, did not render her disabled under Hartford's plan. We agree and affirm.

## I

### A

Olayinka Oye began working at PricewaterhouseCoopers in 2005, earning many promotions and in time becoming a director. Her health took a turn in 2013, however. Suffering from depression, anxiety, and post-traumatic stress disorder, she took a leave of absence to seek treatment. And while Oye briefly returned to work in 2016, she applied for disability benefits through PwC's Long Term Disability Plan a year later, claiming that she suffered from fibromyalgia, a chronic pain condition, which altogether prevented her from working.

As the Plan's insurer and administrator, Hartford initially denied Oye's claim. But after Oye appealed the denial, Hartford reversed course, found her disabled within the meaning of the Plan, and awarded benefits through 2036.

Not long after Oye began receiving benefits, Hartford changed course again. For reasons unclear from the record, the insurer reevaluated Oye's condition and disability claim in 2020. Relying on the reports of several consultative doctors who reviewed Oye's medical records, Hartford terminated her benefits, finding her no longer disabled.

When Hartford upheld its denial on appeal, Oye turned to the courts. Invoking the Employee Retirement Income Security Act, Oye filed suit in federal court in Chicago, seeking to

reinstate her long-term disability benefits under the Plan. See 29 U.S.C. § 1132(a)(1)(B) (ERISA's private right of action).

B

The parties agreed to a "paper trial" pursuant to Federal Rule of Civil Procedure 52(a), which allows the district court to resolve the dispute without a formal trial by making findings of fact and conclusions of law based on the administrative record. See *Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883, 885 (7th Cir. 2015) (observing that Rule 52(a) "is well-suited to ERISA cases in which the court reviews a closed record"). After outlining the history of Oye's claim and cataloguing the evidence for and against a finding of disability, the district court found that Oye had failed to meet her burden of showing that she was disabled within the meaning of the Plan.

While observing that Oye's fibromyalgia no doubt caused pain and limited her abilities, the district court determined that the record evidence, when assessed in its totality, did not support a finding that her condition was so disabling as to render her unable to continue her work at PwC. Most persuasive, the district court reasoned, was that three of Hartford's medical reviewers concluded in detailed consultative reports that Oye's medical records and physical exams did not support her claim of complete disability. These reports, the court explained, belied the brief and conclusory letters from Oye's treating physicians, which described Oye's condition as totally disabling.

The district court also granted judgment in Hartford's favor on another, independent ground. Under the Plan, Oye only qualified for additional disability benefits if she demonstrated that her disability arose from solely physical, rather

than mental, conditions. Because the record suggested that Oye's mental health contributed significantly to her limitations, the district court concluded that she failed to establish entitlement to additional benefits under the Plan.

Oye now appeals.

## II

### A

Because the plan did not give Hartford discretion over eligibility determinations, ERISA obligated the district court to review the administrative record and "come to an independent decision on both the legal and factual issues that form the basis of the claim." *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007); see *Firestone Tire & Rubber Co.*, 489 U.S. 101, 115 (1989) (explaining that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan"). Put differently, unlike disability proceedings in the Social Security context and unless the plan provides otherwise, a district court considering ERISA-based disability claims owes no deference to the plan administrator's decision. See *Diaz*, 499 F.3d at 643.

Oye recognizes this standard in her brief on appeal. But in many places she suggests the district court owed deference to Hartford's prior determination that she was disabled. Indeed, Oye labors to undermine the district court's conclusion by pointing out deficiencies in Hartford's handling of her claim. For example, she faults the district court for disregarding her claim history, insisting that the court should have given weight to the fact that Hartford had previously approved her

claim based on the reports of her treating physicians—the same physicians the district court found unpersuasive.

The district court approached its review exactly the right way, owing no deference to Hartford's prior decisions. See *Dorris v. Unum Life Ins. Co. of Am.*, 949 F.3d 297, 304 (7th Cir. 2020) (describing an ERISA plan administrator's prior decisions as "irrelevant" once a covered employee seeks federal court review). In short, the district court committed no error by affording no weight to Hartford's prior finding that Oye was disabled. The prior administrative finding had no preclusive effect on the district court's own independent review of the record.

## B

That brings us to the merits of the district court's decision, with our review being only for clear error. See *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). Unless the district court's factual findings leave us "with the definite and firm conviction that a mistake has been made," we must affirm. *Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 336–37 (7th Cir. 2012).

Under Hartford's Plan, Oye had to show that her fibromyalgia prevented her from performing the essential duties of a business manager and consultant. As the applicant seeking benefits, she bore the burden of proving entitlement to those benefits, and "any gaps in the record cut against her claim." *Dorris*, 949 F.3d at 304.

We see no clear error in the district court's finding that Oye failed to meet her burden. The court described in detail its reasons for awarding certain evidence more weight. Most important, the court articulated why it found the letters from

Oye's treating physicians unpersuasive, emphasizing that they did not explain why Oye's medical conditions would cause serious functional limitations and seemed otherwise inconsistent with the same physicians' clinical notes. The reports from Hartford's consultative doctors, in contrast, tied each of their conclusions to portions of Oye's medical records. That the district court gave no weight to one Hartford consultant who opined, with little explanation, that Oye had no limitations only reinforces that the court carefully considered the substance of each medical opinion as part of finding Oye was not disabled.

Oye disagrees, contending that the district court erred by crediting the consultative reports of doctors who had never examined her over reports from her treating physicians. But it is not our role, as a court of review, to reweigh the evidence and decide for ourselves which doctors supplied the most credible opinions. See *Scanlon v. Life Ins. Co. of N. Am.*, 81 F.4th 672, 681 (7th Cir. 2023); see also *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823 (2003) ("Nothing in ERISA … suggests that plan administrators must accord special deference to the opinions of treating physicians."). The district court explained at length why it credited the more reasoned reports. The law required no more.

In the final analysis, then, we have a record that supports two reasonable views of the evidence: one that Oye is disabled within the meaning of the Plan, and another that she is not. This observation ends our inquiry, for the Supreme Court has emphasized that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*,

470 U.S. 564, 574 (1985); see also *United States v. Contreras*, 820 F.3d 255, 263 (7th Cir. 2016).

C

One final point warrants underscoring. Oye challenges the district court's failure to discuss what she sees as a relevant piece of evidence: a 2017 consultative doctor's report, solicited by Hartford, which concluded that Oye's fibromyalgia rendered her completely disabled. Indeed, in portions of her brief, Oye seems to suggest the district court committed clear error by failing to discuss this particular report in its opinion. Not so in our view.

The district court's decision to forgo discussion of the 2017 consultative report makes sound sense. In 2016 Hartford solicited opinions about Oye's condition from two different doctors. One opined that Oye was completely disabled, and the other disagreed. Hartford relied on these reports when making its initial determination that Oye was disabled. But when it reevaluated Oye's disability status in 2020, Hartford solicited new consultative reviews. Those more recent reviews observed that Oye's condition had improved since 2017. Undoubtedly realizing the comparative value of the newer reviews, the district court reasonably focused its discussion on the 2020 reports, while declining to discuss either of the two reports from 2017.

In any event, the district court had no legal obligation to discuss each piece of evidence in the record. Rule 52(a) requires only that the district court "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a); see *Xodus v. Wackenhut Corp.*, 619 F.3d 683, 686 (7th Cir. 2010) (explaining that, under Rule 52(a), a district court "need not

address each piece of evidence," and is only required to "include sufficient subsidiary facts so that we can clearly understand the steps by which it reached its ultimate conclusion"); see also *Amerline Corp. v. Cosmo Plastics Co.*, 407 F.2d 666, 669 (7th Cir. 1969) ("The court was not required under Rule 52, Fed. R. Civ. P., to make findings on all facts presented.").

We have emphasized this precise point in the analogous Social Security setting, and we do so here in applying Rule 52(a): "[d]istrict courts and magistrates shoulder no obligation whatsoever to conform their opinions to any particular template or to produce decisions of any particular length." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024). What matters is that the district court provided reasoning adequate to permit "meaningful appellate review," see, *e.g.*, *Andre v. Bendix Corp.*, 774 F.2d 786, 801 (7th Cir. 1985), and that its ultimate decision is "plausible in light of the record viewed in its entirety," *Buechel v. United States*, 746 F.3d 753, 756 (7th Cir. 2014) (quoting *Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1028 (7th Cir. 2002)).

Because the district court's decision easily satisfies these standards, we AFFIRM.